## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMAD ALHAJ HAMDAN,

              Plaintiff

              v.

SCOTT M. OUDKIRK, *et al.*,

              Defendants.

Civil Action No. 24-1001 (BAH)

Judge Beryl A. Howell

## **MEMORANDUM OPINION**

Plaintiff Mohamad Alhaj Hamdan, a citizen of Syria and Turkey, seeks to compel defendants Scott M. Oudkirk, Deputy Chief of Mission of the U.S. Embassy in Turkey, and Antony Blinken, Secretary of the U.S. Department of State, in their official capacities (collectively, "defendants"), to adjudicate his immigrant visa application, which was in administrative processing for roughly six months at the time plaintiff initiated this lawsuit. *See* Compl. ¶¶ 17-23, ECF No. 1. Plaintiff claims that defendants have unreasonably delayed adjudication of his visa application, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. *Id.* ¶¶ 24-35. Defendants now move to dismiss either for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim, under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 7. For the reasons below, defendants' motion to dismiss is granted.

## I.    BACKGROUND

A review of the statutory and regulatory background underlying the claims is set out below, followed by a summary of the factual and procedural history of this case.

A.      **Statutory and Regulatory Background**

The Immigration and National Act ("INA") allows for issuance of immigrant visas, including for "immediate relatives . . . of a citizen of the United States."  8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1).  United States-citizen spouses may seek permanent residence status for their noncitizen spouses by filing a Form I-130, Petition for Alien Relative, with the United States Customs and Immigration Services ("USCIS").  8 C.F.R. § 204.1(a)(1); 8 U.S.C. §§ 1154(a)(1)(A), 1151(b)(2)(A)(i) (defining spouse as an "immediate relative[]" of a citizen).

If USCIS approves the petition, it forwards the case to the National Visa Center ("NVC"), the visa application processing center for the Department of State.  8 C.F.R. § 204.2(a)(3).  The foreign spouse must then submit additional paperwork and processing fees to the NVC.  *Id.* § 42.67.  After processing these materials, the NVC schedules a consular interview for the applicant with a consular officer at the embassy with jurisdiction over the applicant's residence. *See id.* § 42.62.  Following this interview, the consular officer must "issue the visa, refuse the visa . . . or, pursuant to an outstanding order . . . discontinue granting the visa."  *Id.* § 42.81(a).

An "applicant [can] overcome a refusal . . . in two instances: when additional evidence is presented, or administrative processing is completed."  9 FAM § 306.2-2(A)(a). In the former instance, "[w]hen the applicant has presented additional evidence to attempt to overcome a prior refusal," the consular office "re-open[s] and re-adjudicate[s] the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa."  *Id.* § 306.2-2(A)(a)(1).  In the latter instance, "[a] prior INA 221(g) refusal entered for administrative processing may be overcome" if the consular officer "determine[s] administrative processing is completed" and receives any additional "needed information."  *Id.* § 306.2-2(A)(a)(2)(a).

### B.     Factual Background

In June 2021, Naiomy Declet Serrano, a United States citizen, submitted an I-130 visa

application with USCIS on behalf of her husband, Mohamad Alhaj Hamdan, the plaintiff in this

action and a citizen of Syria and Turkey.  Compl. ¶¶ 2, 11.  USCIS approved the petition in May

2022.  Compl. ¶ 18.  After an interview at the U.S. Embassy in Ankara, Turkey, on October 31,

2023, plaintiff was informed that his visa application had been "refus[ed]" and "placed in

administrative processing," Compl. ¶¶ 21-22, pursuant to Section 221(g) of the INA, 8 U.S.C. §

1201(g).  Compl. ¶ 22; Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 9, ECF No. 8.  Despite

numerous inquiries, plaintiff received no meaningful response.  Compl. ¶ 23.  As of September

26, 2024, plaintiff's application for an immigrant visa to the United States appears to have been

refused.  *See Visa Status Check* ("*Visa Check*"), U.S. DEP'T OF STATE,

https://ceac.state.gov/CEACStatTracker/Status.aspx; Compl. ¶ 2 (identifying plaintiff's NVC

visa application number).[1]

In the interim, plaintiff alleges that this delay in receiving a final decision on his

immigrant visa application has "caused significant personal, financial, and emotional

challenges," "put[] strain on [his] marriage," and made "it difficult to concentrate" at work.

Compl. ¶¶ 7-9.  Plaintiff contends that he and his wife are "unable to start their life together"

because his "zero sperm count" "require[] expensive and time-consuming treatments," and they

"want a child," and "wish[] to . . . explore alternative approaches for conceiving a child."  *Id.* ¶ 8;

*id.* Ex. A ("Lab Results"), ECF No. 1-3.  Plaintiff further alleges that his "wife started to rely on

psychiatric medication . . . to cope with the anxiety and depression caused by the situation," and

---

[1]     The same website page suggests that his application remains subject to additional administrative processing
before a final decision is rendered.  *See Visa Status Check*, *supra* ("If you were informed by the consular officer that
your case was refused for administrative processing, your case will remain refused while undergoing such
processing. You will receive another adjudication once such processing is complete.").

that she "had to borrow $23,500 from her grandfather to repay the bank after using her credit card to cover travel expenses to visit [plaintiff]." *Id.* ¶¶ 8-10. In total, plaintiff's wife's trips to Turkey have cost approximately $35,000. *Id.* ¶ 10.

### C.   Procedural History

On April 9, 2024, just over five months after plaintiff's visa application was placed in "administrative processing," plaintiff filed a two-count complaint to compel defendants to adjudicate his visa application. Compl. ¶ 21. Plaintiff maintains that defendants retain jurisdiction over his visa application and alleges that they have a "nondiscretionary duty to review and adjudicate [his] visa application," *id.* ¶ 25, which duty he seeks to enforce with relief under the APA, *id.* ¶¶ 24-28, and the Mandamus Act, *id.* ¶¶ 29-35. In his prayer for relief, plaintiff requests adjudication of his visa application "within fifteen (15) calendar days of this [Court's] order or as soon as reasonable possible," attorney's fees and costs, and "such other and further relief as may be appropriate." *Id.* ¶ 36.

On June 10, 2024, defendants moved to dismiss plaintiff's complaint, under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. at 1, which motion plaintiff opposes, *see* Pl.'s Opp'n. The motion is now ripe for resolution.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation and internal quotation marks omitted). "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), federal courts thus "have an affirmative obligation to consider whether the constitutional and statutory authority exist for us to hear each dispute," *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (citation

and internal quotation marks omitted).  Absent subject-matter jurisdiction, a case must be

dismissed.  FED R. CIV. P. 12(b)(1), 12(h)(3).

When reviewing a motion to dismiss under Rule 12(b)(1), the court must "assume that

the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016)

(citing *Info Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C.

Cir. 2003)), and "accept the well-pleaded factual allegations as true and draw all reasonable

inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865

(D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  At the same time,

"[a court] may consider materials outside the pleadings to determine [its] jurisdiction."  *Id.* at

866 n.7 (citing *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)).

### B.  Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A facially plausible claim pleads facts that are not "'merely consistent with' a

defendant's liability" but "that allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-

57).  In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true,

"even if doubtful in fact," *Twombly*, 550 U.S. at 555 (citations omitted), and "construe the

complaint 'in favor of the plaintiff,'" *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023)

(quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)).  Courts, however, "need

not accept inferences . . . not supported by the facts set out in the complaint, nor must the court

accept legal conclusions."  *Id.* at 476 (quoting *Hettinga*, 677 F.3d at 476).  In determining

whether a complaint fails to state a claim, although a court must review the whole complaint,

*Twombly*, 550 U.S. at 555, courts are limited to "consider[ing] only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271-72 (D.C. Cir. 2019) (second alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.   DISCUSSION

Defendants advance four arguments in support of dismissal, contending that: (1) the Secretary of State cannot redress plaintiff's injuries and thus is an improper defendant who should be dismissed; (2) the consular non-reviewability doctrine bars judicial review; (3) plaintiff fails to identify a discrete, non-discretionary duty to adjudicate his visa application; and (4) plaintiff "fails to plead a plausible claim of unreasonable delay." Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), at 1-2, ECF No. 7. Each argument is addressed *seriatim*.

### A.   Improper Defendant

Defendants argue that the Secretary of State "should be dismissed" from this suit because he "cannot adjudicate or re-adjudicate a visa application." Defs.' Mem. at 1, 4. "Although not characterized as such by Defendants, this argument raises redressability concerns," *Rostamnia v. Blinken*, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *4 (D.D.C. Mar. 28, 2024), and has been repeatedly rejected by this Court, *see, e.g. Giza v. Blinken*, No. 23-cv-1641 (CRC), 2024 WL 3967284, at *2 (D.D.C. Aug. 27, 2024) ("[A] judicial order directing Secretary Blinken to process [visa] applications more swiftly would redress [plaintiff's] claimed injuries."); *Rostamnia*, 2024 WL 1328462, at *4 ("Because the Secretary of State, and by extension other officials in the State Department, have the authority to direct consular officials to adjudicate Plaintiffs' applications, they are properly named in the lawsuit."); *Isse v. Whitman*, No. 22-cv-

3114 (BAH), 2023 WL 4174357, at *5 n.2 (D.D.C. June 26, 2023) ("Defendants have identified

no authority to suggest that the Secretary of State cannot direct consular officers within the State

Department to issue a final decision more quickly on plaintiff's visa application, so this argument

is rejected.").  Simply put, "nothing . . . precludes the Secretary . . . from directing consular

officers to conclude matters presented to them within a reasonable time."  *Al-Gharawy v. Dep't of

Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (internal quotation marks and citation

omitted).

Defendants point to *Yaghoubnezhad v. Stufft*, No. 23-cv-3094 (TNM), 2024 WL 2077551,

(D.D.C. May 9, 2024), and *Liew v. Sanders*, No. 24-cv-3342 (TNM), 2024 WL 3026538,

(D.D.C. June 17, 2024), which hold otherwise.  Defs.' Mem. at 5 (quoting *Yaghoubnezhad*, 2024

WL 2077551, at *5 (holding that textually, because the INA precludes the Secretary from

"administ[ering] . . . powers, duties, and functions conferred upon the consular officers relating

to the granting or refusal of visas," the Secretary lacks "authority to control the timing [of visa

application adjudications].")); Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 2, ECF No. 9

(quoting *Liew*, 2024 WL 3026538, at *2 (same)). These two decisions by the same Judge are

neither binding or persuasive, and, rather than "captur[ing] the current state of the law," as

defendants urge, Defs.' Reply at 3, have not been followed to dismiss the Secretary as a

defendant in similar cases.  As explained in *Janay v. Blinken*, No. 23-cv-3737 (RDM), 2024 WL

3432379, at *5-7 (D.D.C. July 16, 2024), "[i]t would be a mistake" to adopt *Yaghbounezhad*,

and, indirectly *Liew*, which relies on *Yaghoubnezhad*, because *Yaghoubnezhad* "ignores" the text

and "would call into question a host of existing regulations."  Indeed, while the Secretary may

not, under the INA, direct a particular outcome for a specific visa application, *see Baan Rao Thai

Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) ("A *consular officer* . . . has the authority

7

to grant, deny or revoke any visa." (emphasis added) (citation omitted)), the fact is "[c]ontrol over . . . *determinations* . . . is not the same as control over the *timing*," *Al-Gharawy*, 617 F. Supp. 3d at 10 (emphasis in original). *See also Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *3 (D.D.C. Aug. 8, 2024) (recognizing the same and declining to dismiss Secretary Blinken); *Isse*, 2023 WL 4174357, at *5 n.2 (same). In this case, where plaintiff does not challenge the consular officer's adjudication of his visa application but seeks instead only timely adjudication, *see* Compl. ¶ 36, "nothing precludes [the Secretary] from directing the consular officers to decide [the] pending applications 'within a reasonable time,' as the APA requires," *Rostamnia*, 2024 WL 1328462, at *4 (citation omitted). Given that "the Secretary of State [may] exert[] control over the timing of visa adjudications, a judicial order directing Secretary Blinken to process the [plaintiff's] visa application[] more swiftly would redress [his] claimed injuries." *Giza*, 2024 WL 3967284, at *2. Thus, absent binding authority requiring otherwise, the Secretary of State is properly named as a defendant.

### B.   Consular Nonreviewability Doctrine

Defendants spill much ink to argue that plaintiff's suit "runs headfirst into the consular nonreviewability doctrine," Defs.' Mem. at 6, which "shields a consular officer's decision to issue or withhold a visa from judicial review," *id.* (emphasis omitted) (citation omitted) (quoting *Baan Rao*, 985 F.3d at 1024). "[T]wo narrow exceptions" to the doctrine exist: (1) when the denial of a visa "burdens the citizen's constitutional rights," and (2) "when a statute expressly authorizes judicial review." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied*, No. 23-348, 2024 WL 3259699 (U.S. July 2, 2024) (internal quotation marks omitted) (quoting *Baan Rao*, 985 F.3d at 1024-25).

Defendants argue "the claim brought here[,] i.e., a suit by a noncitizen seeking to compel a further decision on a visa application that has already been refused" does not fall within either exception, thus precluding judicial review.  Defs.' Mem. at 7.  This argument is predicated on the defendants' position that the "refusal" of plaintiff's application at the U.S. Consulate General in Ankara in October 2023 is "[i]ndisputably . . . final."  Defs.' Mem. at 10.  This, however, is contrary to plaintiff's allegation that the "refusal" was "not a final decision" because he was informed that his application was "placed in administrative processing."  Compl. ¶¶ 21-22.

As defendants concede, Judges on this Court, including the undersigned, "have held that the doctrine does not apply where, as here, a consular officer has refused a visa application under 8 U.S.C. § 1201(g)," Defs.' Mem. at 8 (citing *Al-Gharawy*, 617 F. Supp. 3d at 11-17), but the application remains in a state of administrative processing, *see, e.g.*, *Isse*, 2023 WL 4174357, at *4 ("[P]laintiff's 'refused' application here is not a final decision on his application because, as plaintiff's Complaint makes clear, he was informed that his visa application is still undergoing 'administrative processing.'") (citation omitted); *Baygan*, 2024 WL 3723714, at *4 ("[T]his Court, like other judges in this District, concludes that the § 221(g) refusal for further administrative processing is not a final decision.").[2]  Nevertheless, defendants contend that the D.C. Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), is "clearly dispositive of the claims in this suit." Defs.' Not. Suppl. Auth. at 1, ECF No. 11.

---

[2]      Defendants invoke *Yaghoubnezhad,* again, and *Sedaghatdoust v. Blinken*, No. 23-cv-3218 (TNM), 2024 WL 2383228, at *3 (D.D.C. May 23, 2024), which relies on *Yaghoubnezhad,* to urge dismissal based on the consular nonreviewability doctrine, Defs.' Mem. at 8-9 n.2; Defs.' Reply at 7, but this invitation is rejected as not persuasive. *See Janay v. Blinken*, No. 23-cv-3737 (RDM), 2024 WL 3432379, at *9-10 (D.D.C. July 16, 2024) (citing cases and finding *Yaghoubnezhad* "unpersuas[ive]" with respect to consular nonreviewability).

In *Karimova*, a consular officer "reviewed [plaintiff's] application and interviewed her," "officially 'refused' her application," and "placed her application in administrative processing." *Karimova*, 2024 WL 3517852, at *2 (internal quotation mark omitted).  The D.C. Circuit affirmed the dismissal of plaintiff's complaint alleging that "the consular officer . . . 'breached [their] duty . . . to make a final decision' on [plaintiff's] application 'within a reasonable time'" by construing the claim as a request to order the consular officer to "make yet another 'final decision' on her already-refused visa application" and concluding plaintiff had "not identified an adequate legal basis for that duty."  *Id.* at *2, *6.  The Circuit explained that a visa "remains officially refused" once "a consular officer makes an official decision refusing to issue a visa," even though the visa may be "place[d] . . . in administrative processing," and "the officer can determine" later, based on new information, "that the administrative processing is 'completed' and . . . then re-open and re-adjudicate the applicant's case."  *Id.* at *2 (citation omitted).

To be sure, *Karimova* leaves somewhat uncertain the body of case law in this District rejecting application of the consular non-reviewability doctrine where, as here, a plaintiff's application has been "refused" subject to further administrative processing.  *Karimova* "suggests that once 'a consular officer reviewed Plaintiff's application, interviewed her, and ruled that no visa would be granted,' Plaintiff's visa application was 'officially refused' notwithstanding its later placement in administrative processing."  *Asadi v. U.S. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024) (brackets omitted) (quoting *Karimova*, 2024 WL 3517852, at *4); *see also Sharifishourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (recognizing the same). *But see Giza*, 2024 WL 3967284, at *4, n.2 (rejecting the application of *Karimova* because "the D.C. Circuit expressly declined to decide whether . . . consular nonreviewability applies to challenges based on the timing, rather

10

than the substance, of visa decisions"); *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *3 (D.D.C. Aug. 23, 2024) (same).[3]

Yet, at this procedural juncture requiring that plaintiff's allegations be accepted as true, *see Ziglar v. Abbasi*, 582 U.S. 120, 127 (2017), the consular officer's "refusal" of his visa application subject to further "administrative processing" may have been a "temporary measure, signaling that processing [was] ongoing," Compl. ¶ 22.  The facts in this case are largely indistinguishable from *Isse v. Whitman*, where plaintiff's visa application had similarly been "refused," but plaintiff was told that his application needed "further administrative processing," and plaintiff "received no further updates" on his application.  2023 WL 4174357, at *1, *5.  The undersigned reasoned that "although the 'consular nonreviewability doctrine applies to a consular officer's *substantive* decisions to approve or deny a visa application, that same reasoning does not extend to the *procedural* considerations at issue.'"  *Isse*, 2023 WL 4174357, at *5 (emphasis in original) (quoting *Al-Gharawy*, 617 F. Supp. 3d at 12); *see also Baygan*, 2024 WL 3723714, at *4 (post-*Karimova* suit finding the same).

In any event, determining "the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one," *Asadi*, 2024 WL 3835409, at *5, is unnecessary since, as set forth *infra* in Part III.D,

---

[3]        In reply, defendants also cite *Department of State v. Muñoz*, 144 S. Ct. 1812 (2023), and *Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024), as support for their position that the consular nonreviewability doctrine bars review of plaintiff's claims. Defs.' Reply at 4, 7.  Neither case is so dispositive here.  The D.C. Circuit in *Goodluck* explicitly did "not consider th[e] question" of consular non-reviewability and thus this case is inapposite. *Goodluck*, 104 F.4th at 926 n.3 (citing *Saavedra Burno v. Albright*, 197 F.3d 1153, 1159-62 (D.C. Cir. 1999)).  In *Muñoz*, the Supreme Court "reaffirmed the doctrine of consular non-reviewability," holding the doctrine barred judicial review of a consular officer's denial of plaintiff noncitizen's visa application, but specifically addressed "the *action* of an executive officer 'to admit or to exclude a [noncitizen],'" *Muñoz*, 144 S. Ct. at 1819-20 (emphasis added) (citation omitted), which is a different circumstance than that at issue here, as defendants concede, where "the basis for [plaintiff's] challenge is not of final agency action, but rather allegations of agency *inaction*," Defs.' Mot at 28 n.5 (emphasis added).  *See also Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024) (recognizing the same).

plaintiff's claims fail on the merits.  *See, e.g.*, *Sharifishourabi*, 2024 WL 3566226, at *4 (in post-*Karimova* suit, assuming "favorably to Plaintiffs, that the doctrine of consular non-reviewability does not bar review of their claims" because "Plaintiffs' claims fail on their merits in any event"); *Motevali v. Blinken*, No. 23-cv-2133 (RC), 2024 WL 3580937, at *5 ("[T]he Court need not scour Plaintiffs' complaint and opposition briefing to determine whether they have alleged a clear, non-discretionary duty stemming from another source; their claims fail on the merits.").

### C.      Non-Discretionary Duty

Defendants further argue that plaintiff's claims are unreviewable because "Plaintiff cannot identify a clear, non-discretionary duty requiring a consular office to adjudicate, let alone re-adjudicate, any specific visa application."  Defs.' Mem. at 13; *see Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take.'" (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004))).  To bolster their argument, defendants argue *Karimova* is "dispositive of the claims presented" here.  Defs.' Not. Suppl. Auth. at 4.  In *Karimova*, the D.C. Circuit held that the plaintiff had failed to "adequately allege[] that the consular officer has [] a duty" conclusively to adjudicate her visa application, where plaintiff had "relie[d] on Section 555(b) of the APA"—"and *only* Section 555(b)"—"as the source of the consular officer's alleged duty," because "Section 555(b) does no such thing."  2024 WL 3517852, at *1, *3-6; *see* 5 U.S.C. § 555(b) (providing that "each agency shall proceed to conclude a matter presented to it . . . within a reasonable time").  The D.C. Circuit reasoned that this is not "a specific, unequivocal command to act that would justify mandamus or [APA] Section 706(1) relief every time someone complained of delay."  *Id.* at *4 (citation and internal quotation marks omitted).  This conclusion was reinforced by three

additional considerations: (1) "consular officers have broad discretion when adjudicating visa applications," *id.* (citation omitted); (2) plaintiff's "'matter' has already been 'conclude[d],'" *id.* (quoting 5 U.S.C. § 555(b)); and (3) plaintiff's claim "ar[ose] within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power," which "types of claims generally fall outside the Judicial Branch's wheelhouse," *id.* at *5 (brackets, citations, and internal quotation marks omitted).

*Karimova* certainly "casts some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused.'" *Baygan*, 2024 WL 3723714, at *5 n.1; *see also Ibrahim v. Spera*, No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("[T]he fact that *Karimova* was moving under the APA . . . but that plaintiff is moving under the [INA] and 8 U.S.C. § 1202(b), does not make a difference."). Nevertheless, *Karimova* is not "clearly dispositive." Defs.' Not Suppl. Auth. at 1. Unlike in *Karimova*, plaintiff here relies on 8 U.S.C. § 1202(b) of the INA, in addition to Section 555(b), as the source of defendants' alleged non-discretionary duty. *See* Compl. ¶ 32.

Assuming, without deciding, that a mandatory non-discretionary agency action applies in the form of the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b), is the appropriate action here. *See Karimova*, 2024 WL 3517852, at *6 (identifying *Da Costa* as "locating [USCIS's] 'nondiscretionary duty' to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)" (citing *Da Costa*, 80 F.4th at 340)); *see also Asadi*, 2024 WL 3835409, at *5 ("[A]ssum[ing] favorably to Plaintiff that her complaint identifies a clear, non-discretionary duty" even though "Plaintiff largely relies on section 555(b) of the APA as the source of such a

duty" since "her claims fail on the merits" (citations omitted)); *Giza*, 2024 WL 3967284, at *4 ("The Court need not decide whether the INA or its regulations impose this duty because, either way, the [plaintiffs] have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable."); *Khamrabeva v. Blinken*, No. 22-cv-1219 (RC), 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (surveying different approaches to the question whether 8 U.S.C. § 1202(b) imposes a non-discretionary duty on the government to adjudicate visas). Absent binding precedent supporting plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate the visas, the assumption of reviewability permits consideration of the merits of plaintiff's visa mandamus claim.  *See Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts 'may assume without deciding that plaintiffs' statutory claims are reviewable' and proceed to the merits 'notwithstanding consular nonreviewability.'" (quoting *Trump v. Hawaii*, 585 U.S. 667, 682-83 (2018))); *Janay*, 2024 WL 3432379, at *10 (same).

### D.    Adjudication Delay Is Not Unreasonable

On the merits, defendants argue that plaintiff's claims fail because any delay here is not unreasonable.  Defs.' Mem. at 20-29.  "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable."  *Da Costa*, 80 F. 4th at 340 (quoting *Norton*, 542 U.S. at 64) (citing *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

To evaluate whether a delay in agency action is unreasonable, the Court balances the six-"*TRAC*" factors:

(1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed

> with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency latitude in order to hold that agency action is unreasonable delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations and quotation marks omitted; formatting modified); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *TRAC*, 750 F.2d at 80)).  In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *see Norton*, 542 U.S. at 63-64.

To avoid the likely outcome from application of the *TRAC* factors, plaintiff argues that due to the "fact-intensive nature" of the inquiry, evaluation of the factors is "inappropriate" at the motion to dismiss stage.  Pl.'s Opp'n at 27.  While the D.C. Circuit has cautioned that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court," *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), application of the *TRAC* factors is appropriate here as the parties have fulsomely supplied factual allegations and do not dispute the specified dates when relevant agency actions occurred.  *See, e.g.*, *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1-2  (D.C. Cir. Mar. 22, 2024) (per curiam) (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting the "the majority view in this District [] that

15

application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay"). As defendants correctly argue, *see* Defs.' Reply at 12-14, the record provides sufficient, discernible, and undisputed facts to evaluate the *TRAC* factors.

### 1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors point in defendants' favor because the delay in adjudicating plaintiff's visa application, a little over five months, is not unreasonable. These two factors examine "the extent of and reasons for" agency delays. *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024). The first factor—whether the agency follows a rule of reason—is considered the "most important," *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and often evaluated in conjunction with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1 (citing *TRAC*, 750 F.2d at 80).

In analyzing the first *TRAC* factor, courts "evaluate the length of delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Maspeth*, 336 F.3d at 1102). The parties agree, Defs.' Mem. at 23, Pl.'s Opp'n at 30, that Congress typically grants agencies "wide discretion" in their visa processing timelines, and, in fact, Congress has set "no deadline or timeframe" within which the State Department of a consular officer must re-adjudicate visa applications. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017).

Plaintiff invokes 8 U.S.C. § 1571(b), to "supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80 (citation omitted). Pl.'s Opp'n at 30-31. Noting that Section 1571(b) provides a 180-day timer on the processing of an immigration benefit application, plaintiff's view is this timeframe should "inform" the agency's priorities. *Id.* Even if Section 1571(b)'s timeframe

were the measure of reasonableness under *TRAC*, meaning factors one and two would "somewhat favor[] Plaintiffs" who "wait[] longer than 180 days," *Da Costa*, 80 F.4th at 344, the alleged processing delay here of less than six months fits squarely within Section 1571(b)'s "aspirational statement" of 180 processing days, *id.* (citation omitted).  In any event, Section 1571(b) is not the measure, as a legal matter, of the reasonableness of agency delay.  *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (interpreting the statute's language as "precatory rather than binding" and collecting cases).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (quoting *Khan v. Bitter*, No. 23-cv-1576 (BAH), 2024 WL 756643, at *4 (D.D.C. Feb. 23, 2024)).  While no bright line rule to determine reasonableness exists, "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2021) (quoting *Trump*, 585 U.S. at 702-03).  The deference has led "judges in this District [to] 'consistently' h[old]" that "two-to three year [delays]" "do[] not amount to unreasonable delay." *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. Mar. 28, 2024) (quoting *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. April 29, 2022)); *see also Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Janay*, 2024 WL 3432379, at *11 ("[T]he delay lasted about five months. A delay of that modest length is not unreasonable under the circumstances and by comparison to similar . . . cases."); *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *8 (D.D.C. Jan. 30, 2024) (finding thirteen-month delay not unreasonable); *Azeez*, 2024 WL 3924565, at *5 (finding seventeen-month delay not unreasonable).

Plaintiff offers no reason to depart from this precedent.  *See* Pl.'s Opp. at 30-31.  The visa application at issue was placed in administrative processing on October 31, 2023, and was pending for just over five months when plaintiff sued. Compl. ¶ 20-21. Taken together, the first and second factors weigh in defendants' favor.

### 2. *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80 (citations omitted).  As plaintiff concedes, this factor "carries significant weight," in the *TRAC* analysis, Pl.'s Opp'n at 31 (citing *Mashpee*, 336 F.3d at 1100), and weighs heavily in defendants' favor here, particularly in context of the ongoing recovery efforts from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in overall adjudication.  *Da Costa*, 80 F.4th at 343-44 (first quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); and then quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."  *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Plaintiff provides no roadmap for how to navigate out of the logistical maze that, given limited government resources, expediting relief here would "necessarily come at the expense of other similarly situated applicants," *Da Costa*, 80 F.4th at 344 (citation and internal quotation marks omitted).  Instead, plaintiff argues that "there is no such linear queue for visa applicants . . . in administrative procession" and "each applicant's processing time is unique and not dependent on the processing completion of any other," potentially resulting in "[no] other

applicant in administrative processing [being] prejudiced."  Pl.'s Opp'n at 31-32.  Plaintiff's

argument overlooks the State Department's limited resources to manage the continuing post-

pandemic visa application backlog, *see* U.S. DEP'T OF STATE, *Immigrant Visa Interview-Ready*

*Backlog Report,* https://travel.state.gov/content/travel/en/us-visas/visa-information-

resources/visas-backlog.html (last updated Aug. 2024).  Indeed, on the ground, "it is readily

apparent that '[c]onsular processing capacity is presently a zero-sum game.'"  *Giza*, 2024 WL

3967284, at *7 (alteration in original) (quoting *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL

639635, at *6 (D.D.C. Feb. 15, 2024)).  Recognizing "no basis for reordering agency priorities,"

*In re Barr Lab'ys, Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.  *See also Arab*

*v. Blinken*, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State

Department's priority-setting and resource-allocation decisions." (collecting cases)).

### 3.   *TRAC* Factors 3 and 5

"The third and fifth factors are often considered together, and require the Court to

consider plaintiffs' interests, health, and welfare."  *Momeni v. Blinken*, No. 23-cv-3421 (RCL),

2024 WL 4332604, at *6 (D.D.C. Sept. 27, 2024) (quoting *Chowdhury v. Blinken*, No. 21-cv-

1205 (RCL), 2022 WL 136795, at *4 (D.D.C. Jan. 14, 2022)).  While "the individual health or

welfare of th[e] specific plaintiff is most relevant when evaluating *TRAC* factors three and five,"

*Kahn*, 2024 WL 755643, at *5, the third factor also looks to the impact on others from granting

plaintiff's demanded relief, requiring attention to the "many others [who] face similarly difficult

circumstances as they await adjudication of their visa applications."  *Mohammad v. Blinken*, 548

F. Supp. 3d 159, 168-69 (D.D.C. 2021) (citation and internal quotation mark omitted).

Accelerated adjudication of plaintiff's visa application would necessarily divert resources from

others.  However, these interests are best analyzed under factor four, discussed *supra* Part III.D.2.  *See Azeez*, 2024 WL 3924565, at *5 (recognizing the same).

Plaintiff alleges that the delayed adjudication has caused "significant personal, financial, and emotional hardship" because he has been apart from his wife for nearly three years.  Compl. ¶ 8.  Furthermore, plaintiff alleges that he suffers from fertility issues and the delay in adjudicating his visa has caused a domino-effect delay in his ability to seek treatment and explore alternative approaches for conceiving a child with his wife.  *Id.*; Pl.'s Opp'n at 30. Defendants counter that the applicable "health and welfare harms" must be "link[ed] [to] the delayed adjudication," *Da Costa*, 80 F.4th at 345, arguing that plaintiff's harms "are not the type of harms that could make the third and fifth *TRAC* factors tilt in Plaintiff's favor," Defs.' Mem. at 27.  The D.C. Circuit has found that the third and fifth factors do not favor noncitizens when they failed "for example, [to] allege that they are unable to access electricity, water, food, or shelter." *Da Costa*, 80 F.4th at 346.  Thus, the nature of plaintiff's harm due to further delay in adjudicating his visa application do not weigh *TRAC* factors 3 and 5 in his favor and, at most, are neutral.  *Cf. Lee*, 2024 WL 639635, at *7 (finding plaintiff's case weakened when the "allegations, standing alone, do not suggest plaintiff is in a worse position than a visa applicant who merely claims that his life has been put on hold" (citation and internal quotation marks omitted)).

### 4.    *TRAC* Factor 6

The sixth and final *TRAC* factor considers whether "an impropriety lurk[s] behind agency lassitude."  *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  This is not essential, however, as "the court need not 'find any impropriety . . . to hold that agency action is unreasonably delayed.'"  *Id.*

Plaintiff first contends the "lack of an articulated rule of reason" itself is an act of bad faith.  Pl.'s Opp'n at 33.  As discussed *supra* Part III.D.1, plaintiff posits that Section 1571(b) supplies content for the rule of reason, Pl.'s Opp'n at 30-31, and the delay he is experiencing falls within the "aspirational" 180-day deadline, *Da Costa*, 80 F.4th at 344.  Taking plaintiff's allegation here at face value would double weigh the first factor, and, given that Congress typically grants agencies "wide" discretion in their visa processing timelines, *Skalka*, 246 F. Supp. 3d at 153-54, an inference of bad faith will not be made without specific allegations as to improper motivations behind the lack of a rule of reason.

Second, plaintiff alleges bad faith lurking behind the failure to provide an "estimated time of when an administrative processing is likely to be conclude."  Pl.'s Opp'n at 34.  Plaintiff again provides insufficient facts to draw a reasonable inference that this was done in bad faith.  *See Iqbal*, 556 U.S. at 678.  Finally, plaintiff argues that "failure in transparency to provide staffing levels, productivity, and other relevant information," rises to the level of improper motive.  *Id.* at 34.  As with the previous two, plaintiff provides no facts to support his allegation of bad faith.  More importantly, *transparency* in staffing has nothing to do with the *pace* of administrative processing and thus cannot be indicative of bad faith without specific factual allegations demonstrating as such.  Effectively, however, "the lack of plausible allegations of impropriety does not weigh against [Plaintiff]," and thus, the sixth factor is neutral and does not favor either side.  *Palakuru*, 521 F. Supp. 3d at 53.

### 5.   *TRAC* Factors Considered in Totality

Taking all six *TRAC* factors together, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA.  In other cases, delays in visa processing of even longer duration than presented here have resulted in same conclusion.  *See, e.g.*, *Da Costa*, 80

F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez*, 2024 WL 3924565, at *5 (finding seventeen-month delay not unreasonable); *Mashaghzadehfard v. Blinken*, No. 23-cv-3164 (RJL), 2024 WL 4198689, at *5-6 (D.D.C. Sept. 16, 2024) (finding nineteen-month delay not unreasonable); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (finding forty-one month delay not unreasonable); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding forty-two month delay not unreasonable).  The agency resource backlog stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder his visa application in the queue, all support the conclusion that the delay in adjudication of plaintiff's visa application is not unreasonable.  Even if *TRAC* factors three and five favored plaintiff, a "holistic review of the factors does not allow these two to eclipse the rest."  *Isse*, 2023 WL 4174357, at *9.  In these situations, "the government's interests in balancing its own priorities" outweighs the individual harm done to plaintiff as he awaits a final decision.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 320 (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)).  Plaintiff's Complaint must be dismissed for failure to state a claim.

While sympathetic to the challenges posed for plaintiff during his separation from his wife, this is insufficient to prioritize the processing of his visa application over many other individuals and families facing similarly difficult circumstances as they await immigration decisions.  *See Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem as the expense of other similarly situated applicants").

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Complaint for failure to state a claim for relief, under Federal Rule of Civil Procedure 12(b)(6), is granted. An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: October 23, 2024

_____
**BERYL A. HOWELL**
United States District Judge